588 So.2d 251 (1991)
Joseph Samuel SERIAN, Appellant,
v.
STATE of Florida, Appellee.
No. 90-2525.
District Court of Appeal of Florida, Fourth District.
October 2, 1991.
Rehearing or Certification Denied December 3, 1991.
*252 Nathan P. Diamond, Miami, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Joseph A. Tringali, Asst. Atty. Gen., West Palm Beach, for appellee.
WARNER, Judge.
Appellant claims in this appeal that he can't be convicted of practicing optometry without a license under section 463.015(2)(b), Florida Statutes (1989), because the alleged offenses occurred on the Seminole Indian Reservation in Broward County. He contends that the statutory violation with which he was charged is a violation of a civil regulatory statute which cannot be enforced on the reservation. Finding that the statutory violation is criminal/prohibitory in nature, we affirm.
Appellant, an optometrist who is not an Indian, entered into a lease of property fronting on U.S. 441 in Hollywood, Florida, with the Seminole Indian Tribe for the purposes of opening an optometry practice. The property is part of the Seminole Reservation. A majority of appellant's patients are non-Indians. Before commencing the practice of optometry he did not obtain a Florida license, although he was licensed in Ohio. Upon discovery of his practice, the state charged appellant with ten counts of violating the optometry licensing laws. He claimed that the court did not have jurisdiction to try him for the offenses because they occurred on the reservation where the law could not be enforced. The trial court denied his motion to dismiss. He pled nolo contendere to the charges, reserving his right to pursue this appeal challenging the jurisdiction of the state's licensing law on the Indian reservation.
Pursuant to Public Law 280 (18 U.S.C.A. Section 1162), Florida asserted jurisdiction over criminal offenses committed on the Indian reservations and over civil causes of actions arising within the reservation under section 285.16, Florida Statutes (1961). However, the assertion of civil jurisdiction was limited in Bryan v. Itasca County, Minnesota, 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976) where, in striking down a personal property tax levied by a county on property located on the Indian reservation, the Court concluded that the grant of civil jurisdiction to the states under the federal statute extended only to what was necessary to resolve private disputes between Indians and Indians and other private citizens. The Court concluded that Congress had not intended to confer general civil regulatory powers over reservation Indians.
After Bryan, courts looked to the nature of the statute sought to be enforced on the reservation to determine whether the state's enforcement power was properly exercised. In Seminole Tribe of Florida v. Butterworth, 658 F.2d 310 (5th Cir.1981) the Seminoles sought a declaratory judgment as to the application of the Florida Bingo Statute to the reservation activities. Whether the statute restricting bingo games to charitable functions could be enforced on the Seminole reservation depended upon whether the operation of bingo games was statutorily prohibited as against public policy or merely as a regulatory measure, and the court stated that legislative intent determined whether the statute was regulatory or prohibitory. Finding that bingo was permitted in some forms in the state, the court held that the bingo statute was a regulatory statute and unenforceable on the reservation.
Adopting the Butterworth analysis in California v. Cabazon Band of Mission Indians, 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987) the Supreme Court stated:
... if the intent of a state law is generally to prohibit certain conduct, it falls within Pub.L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and Pub.L. 280 does not authorize its enforcement on an Indian reservation. The shorthand test is whether the conduct at issue violates the State's public policy.
480 U.S. at 209, 107 S.Ct. at 1088.
However, the Court also acknowledged that:

*253 under certain circumstance a State may validly assert authority over the activities of non-members on a reservation, and ... in exceptional circumstances a State may assert jurisdiction over the onreservation activities of tribal members. New Mexico v. Mescalero Apache Tribe, 462 U.S. 324, 331-332, 103 S.Ct. 2378, 2385, 76 L.Ed.2d 611 (1983) (footnotes omitted). Both Moe v. Confederated Salish and Kootenai Tribes, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976), and Washington v. Confederated Tribes of Colville Indian Reservations, 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980), are illustrative. In those decisions we held that, in the absence of express congressional permission, a State could require tribal smokeshops on Indian reservations to collect state sales tax from their non-Indian customers. Both cases involved nonmembers entering and purchasing tobacco products on the reservation involved. The State's interest in assuring the collection of sales taxes from non-Indians enjoying the off-reservation services of the State was sufficient to warrant the minimal burden imposed on the tribal smokeshop operators.
107 S.Ct. at 1091-92.
Applying the foregoing to the instant case, the clear public policy of the state of Florida as expressed in the optometry licensing law is the protection of the citizens of the state. Section 463.001, Florida Statutes (1989) provides:
The sole legislative purpose in enacting this chapter [on optometry] is to ensure that every person engaged in the practice of optometry in this state meets minimum requirements for safe practice. It is the legislative intent that such persons who fall below minimum standards or who otherwise present a danger to the public shall be prohibited from practicing in this state... .
While the state permits the practice of optometry throughout the state, nowhere does it permit its practice without proper licensing. The licensing requirements are not merely to regulate conduct and produce revenue, as are hunting and fishing licensing requirements, see U.S. v. Marcyes, 557 F.2d 1361 (9th Cir.1977), but instead serve to protect the public from untrained optometrists (or doctors or dentist, etc.). Therefore, we hold that the statute is criminal/prohibitory and may be enforced.
Appellant argues that pursuant to section 285.18, Florida Statutes (1989), the tribe is allowed to contract for health services for its members without limitation. Therefore since the tribe has contracted with him to provide services to the tribe, the state cannot require that he be licensed because that would impose a limitation on the tribe's authority under the statute. Whatever merit that argument may have if the optometrist were a salaried employee of the tribe treating only its members, it fails in the instant case where appellant is treating mostly non-Indians. Appellant does not contend that the specific charges against him relate to treatment of Indian patients. Clearly, the state has a right to prosecute the appellant for violating the law with respect to treatment of its citizens, even if it would not have the right to prosecute him for treatment of the Indians, a point which we do not decide.
Affirmed.
ANSTEAD, J., and STEVENSON, W. MATTHEW, Associate Judge, concur.